TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney
& Chief, Criminal Division
MARK AVEIS (Cal. Bar No. 107881)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-4477
Facsimile: (213) 894-0141
E-mail: mark.aveis@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
6/8/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: KM DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAMONT MCCARTHY,<br><br>Defendant. | No. CR 2:26-cr-00364-PA<br><br><u>PLEA AGREEMENT FOR DEFENDANT LAMONT MCCARTHY</u> |

1. This constitutes the plea agreement between LAMONT MCCARTHY ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") arising from defendant's fraudulent applications for pandemic stimulus relief. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information, in the form attached hereto as Exhibit A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

## RESTITUTION

3. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's

payment of the full financial obligation, including referral to the Treasury Offset Program.

4. Defendant further agrees to:

a. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

b. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

c. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO's OBLIGATIONS

5. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses of conviction up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

6. Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in or devised a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

PENALTIES AND RESTITUTION

7. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: twenty years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the

victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The parties agree that the total amount of restitution due is $1,927,935,[1] payable to the U.S. Small Business Administration.

9. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that

---

[1] Comprised of $963,435 in Paycheck Protection Program loan proceeds relating to a loan to "India Towing" and $964,500 relating to a loan to "Cal Construction."

it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

12. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided in Exhibit B

attached hereto and incorporated herein by this reference, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

13. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

14. Defendant and the USAO agree to the following applicable Sentencing Guidelines and § 3553(a) factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Specific Offense Characteristics (loss between $1.5MM and $3.5MM): | 16 | [U.S.S.G. § 2B1.1(b)(1)(I)][2] |

[2] Defendant reserves the right to argue that the Sentencing Guideline Loss should be +14, not +16, under the Sentencing Guidelines amendments adopted April 30, 2026, effective November 1, 2026.

| | | |
|---|---|---|
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1] |
| Early cooperation | -2 | [18 U.S.C. § 3553(a)] |
| Total Offense Level: | 18[3] | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 29 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

15. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

[3] See paragraph 14 and note 2, infra.

16. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

17. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

LIMITED WAIVER OF DISCOVERY

18. Defendant acknowledges that he has received very limited discovery from the government and that he has had sufficient time to review and discuss that discovery with his attorney. In exchange for the government's obligations under this agreement, defendant waives and gives up any right he may have to review additional discovery that the government has not produced or to claim that the government has not produced all discovery.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

19. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statute of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the

statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21. Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of not more than the statutory maximum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; and the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

22. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

23. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410

of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

25. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

26. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations above are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant’s guilty pleas, and defendant will remain bound to fulfill all defendant’s obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant’s attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant’s attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

///

///

///

///

///

///

///

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

Mark Aveis — May 29, 2026

MARK AVEIS — Date
Assistant United States Attorney

Lamont McCarthy — 5/29/2026

LAMONT MCCARTHY — Date
Defendant

/s/ Elon Berk, Esq. — 05/29/2026

ELON BERK — Date
Attorney for Defendant
LAMONT MCCARTHY

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Lamont McCarthy
LAMONT MCCARTHY
Defendant

5/29/2026
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am LAMONT MCCARTHY's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

/s/ Elon Berk,Esq.
ELON BERK
Attorney for Defendant LAMONT MCCARTHY

05/29/2026
Date

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LAMONT MCCARTHY,<br>Defendant. | No. CR<br>I N F O R M A T I O N<br>[18 U.S.C. § 1343: Wire Fraud] |

The United States of America charges:

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. Defendant LAMONT MCCARTHY was a resident of Los Angeles, California, in the Central District of California.

2. Starting in or around March 2020, Congress began enacting laws to help the country through the Covid-19 pandemic, including the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.

3. The CARES Act authorized the use of taxpayer funds for various pandemic stimulus programs, including to retain employees for or to sustain going concerns through loans made under the Paycheck

Protection Program. Such loans were referred to as a "PPPL," or collectively, "PPPLs."

4. In order to initially obtain such funds, a qualifying business was required, among other things, to submit an application, typically through an online portal, to a financial institution, the loans of which were guaranteed by the U.S. Small Business Administration ("SBA"), that required that the applicant business (through its authorized representative) acknowledge program rules and make certain affirmative certifications that all statements about the business were true and correct and that the applicant business would comply with all rules associated with receiving such funds, including that such funds could be used for eligible expenses such as payroll, sick leave, rent, and other business obligations.

5. PPPL proceeds were wire-transferred to an account designated by the applicant's representative, and for use solely pursuant to PPPL rules.

B. THE SCHEME TO DEFRAUD

6. Beginning in or around February 2021 and continuing through at least in or around December 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCCARTHY, together with others known and unknown, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud financial institutions, the SBA, and the United States Treasury as to material matters, and to obtain money and property from financial institutions, the SBA, and the United States Treasury, namely, PPPL proceeds, by means of material false and fraudulent pretenses, representations, and promises.

7. The fraudulent scheme operated, in substance, as follows:

a. Defendant MCCARTHY would purchase “shell” entities, namely, corporations that existed in name only and that did, and that defendant intended that they do, no actual business and had no income or expenses.

b. Defendant MCCARTHY would submit and cause to be submitted to financial institutions applications for PPPLs on behalf of two shell entities, “Cal Construction” and “India Towing,” in which, among other things, defendant would falsely and fraudulently represent that each such entity had substantial income, 15 employees, and substantial monthly payroll expenses when, in fact, neither entity had any income, any employees, or any monthly payroll.

c. Defendant MCCARTHY would submit and cause to be submitted in connection with such PPPL applications fabricated Internal Revenue Service Forms 941 that falsely and fraudulently represented that each shell entity had 15 employees and substantial payroll expenses.

d. Defendant MCCARTHY would use PPPL proceeds for personal and other impermissible purposes.

C. USE OF THE WIRES

8. On or about February 25, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCCARTHY, together with others known and unknown to the United States of America, for the purpose of executing the scheme to defraud described above, caused the interstate wire transfer of a PPPL application for a shell entity, Cal Construction, using a server

///

///

outside the state of California to transmit the application to a financial institution, namely, Harvest Small Business Finance, LLC.

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

ROGER A. HSIEH
Assistant United States Attorney
Chief, Major Frauds Section

MARK AVEIS
Assistant United States Attorney
Major Frauds Section

Exhibit B (Stipulated Factual Basis)

The parties agree that the following stipulated factual basis meets the requirements of Fed.R.Crim.P. 11(b)(3).

At all relevant times:

Defendant was a resident of Los Angeles County, California, in the Central District of California, a location in which he performed all of the acts described below.

*The Paycheck Protection Program*

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in the form of loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP;" loans under that program are sometimes referred to herein as a "PPPL" or "PPPLs"). PPPL proceeds were required to be used by the applicant business to pay certain expenses such as payroll costs, interest on mortgages, rent, and utilities.

In order to obtain a PPPL, a qualifying business was required, among other things, to submit a PPPL application that required the applicant business (through its authorized representative) to acknowledge PPP program rules and make certain affirmative certifications that the applicant business would comply with all such rules to be eligible to obtain a PPPL. Such certifications required, among other things, that the applicant affirm that "[PPP] funds will be used to retain workers and maintain payroll or make mortgage

interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the [PPPL application]" and consistent with PPP rules.

The authorized representative of the applicant was to certify that "the information provided in th[e] PPP application and the information provided in all supporting documents and forms is true and accurate in material respects," and that "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

A PPPL applicant's representative was also required to state, among other things, the applicant's average monthly payroll expenses and number of its employees. These figures were used to calculate the amount of money that the business was eligible to receive under the PPP. In addition, the applicant's representative was required to provide documentation showing its payroll expenses and such other documentation as the U.S. Small Business Administration ("SBA") or the lender requested.

A PPPL application and supporting documents were submitted online through a portal and processed by a participating lender. The applicant's representative confirmed his/her true identity through a variety of means including providing personal identifying information, uploading a copy of that person's driver's license and/or Social Security card, and/or executing loan documents via a document authentication platform such as DocuSign. If a PPPL application was approved, the participating lender would fund the PPPL using its own funds and would wire-transfer those funds to a bank account designated by the applicant. By wire-transferring the loan proceeds to that designated account, the lender, the SBA and,

ultimately, law enforcement would have yet another way to ensure that the application was sought by the stated applicant through his/her duly acting representative and that the applicant received and used those funds in accordance with PPP rules.

If PPP lending criteria were followed by the lender, the SBA, in turn, guaranteed the borrower's repayment in the event of that borrower's default.

*PPPL Fraud*

On or about February 25, 2021, in Los Angeles County, within the Central District of California, defendant, for the purpose of executing this scheme to defraud, caused the submission, online from Los Angeles County, using an interstate wire, to a server outside the state of California, of a PPPL application on behalf of a shell entity called "Cal Construction" to a financial institution, namely, Harvest Small Business Finance, LLC.

On or about April 4, 2021, in Los Angeles County, within the Central District of California, defendant, for the purpose of executing his scheme to defraud, caused the submission, online from Los Angeles County, using an interstate wire, to a server outside the state of California, of a PPPL application on behalf of a shell entity called "India Towing" to a financial institution, namely Harvest Small Business Finance, LLC.

In support of each such application, with the intent to deceive and cheat financial institutions and the SBA, defendant (1) knowingly and falsely represented that each entity had 15 employees and substantial monthly payroll, and (2) prepared and knowingly submitted fake Internal Revenue Service Forms 941 that falsely stated that each entity had 15 employees and $1,124,977.50 total wages. At all

relevant times, defendant well knew that both “Cal Construction” and “India Towing” were “shell” entities that did no business and intended to do no business; had no employees; and had no payroll or other obligations. In fact, defendant purchased each “shell” entity with the intent to use each such “shell” entity to fraudulently seek credit.

Defendant admits that defendant received and controlled the proceeds of these PPPLs that were approved based on defendant’s false statements and fraudulent documents, totaling approximately $1,927,935, all of which defendant knowingly misused or caused to be misused. Defendant agrees that such amount constitutes loss under USSG § 2B1.1(b)(1).

**CERTIFICATE OF SERVICE**

I, Ethan Thomas, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

PLEA AGREEMENT FOR DEFENDANT LAMONT MCCARTHY

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☒ Via email, as follows:
Elon Berk
eberk@crimlawla.com

☐ By Federal Express, as follows:

This Certificate is executed on June 8, 2026, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

*Ethan Thomas*

Ethan Thomas
Legal Administrative Specialist